UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

----------------------------------------------------------------- x
WEST COAST LIFE INSURANCE COMPANY,          :
                                            :
                    Interpleader Plaintiff, :
                                            :          **MEMORANDUM &**
        -against-                           :          **ORDER ON CROSS-**
                                            :          **MOTIONS FOR**
                                            :          **SUMMARY JUDGMENT**
QUINN JAMES DEGNER, GRETA                    :
GRACE DEGNER, and KATRIN                     :
MARIA DEGNER,                               :          3:22-CV-00443 (VDO)
                                            :
                    Interpleader Defendants. :
----------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

      This interpleader action was brought by West Coast Life Insurance Company ("West Coast") to resolve competing claims to the proceeds of Kristin Schleiter's ("Schleiter") life insurance policy. The Court previously entered default judgment against one of the deceased's daughters, Katrin Degner ("Katrin"), who did not appear to defend this action, and discharged and dismissed West Coast from the case. Before the Court are the motion for summary judgment of the deceased's husband, Quinn Degner ("Quinn"), and the cross-motion for summary judgment of the deceased's daughter, Greta Degner ("Greta"). After careful consideration of the record and applicable law and for the following reasons, Quinn's motion for summary judgment is **granted in part and denied in part** and Greta's cross-motion for summary judgment is **denied**. The issue of whether Schleiter substantially complied with her life insurance policy's procedures to change the beneficiary remain before the trier of fact.

I.     **BACKGROUND**

A.     **Undisputed Facts**

The following facts are undisputed and are based on the record, including the parties' pleadings,[1] and the parties' Local Rule 56(a) statements.[2]

On January 11, 2002, West Coast issued a policy insuring Schleiter's life with a face amount of $1,000,000.00 (the "Policy"). (Compl., ECF No. 1 ¶ 7.) Schleiter's policy application designated her husband Quinn as the Policy's primary beneficiary and their daughter Greta as the contingent beneficiary. (*Id.*)

Quinn and Schleiter were married in 1991. (Greta's 56(a)2 ¶ 1.) In June 2017, Schleiter was diagnosed with amyotrophic lateral sclerosis ("ALS"), a progressive condition that gradually led to her deterioration and death. (Quinn's 56(a)2 ¶ 4.) Schleiter's ALS prevented her from signing a document by hand and forced her to respond to questions by spelling out words with the assistance of her eye-gaze device. (*Id.* ¶ 11.) In July 2020, Schleiter gave a durable statutory power of attorney to Quinn, which authorized him to change the beneficiary designation. (Greta's 56(a)2 ¶ 6; ECF No. 54-2.)

---

[1] The pleadings include: West Coast's Interpleader Complaint, ECF No. 1; Quinn's Answer and Cross-Claim, ECF No. 23; Greta's Answer and Cross-Claim, ECF No. 25; Greta's Answer to Quinn's Cross-Claim, ECF No. 33; and Quinn's Answer to Greta's Cross-Claim, ECF No. 34.

[2] The parties' Local Rule 56(a) statements include: Quinn's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Quinn's 56(a)1," ECF No. 53); Greta's Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment ("Greta's 56(a)2," ECF No. 61-1); Greta's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Greta's 56(a)1," ECF No. 58); and Quinn's Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment ("Quinn's 56(a)2," ECF No. 62-1).

### 1.    Fairfield Probate Court Proceedings

On May 5, 2021, Schleiter petitioned the Court to appoint her sister, Laura Brune, as her voluntary conservator of the estate and person. (Greta's 56(a)2 ¶ 8.) Schleiter's counsel in the probate proceedings, Heather Lange, submitted an affidavit with the voluntary conservatorship petition stating, in relevant part, "I believe Ms. Schleiter to be competent and to understand the nature and consequences of her request." (Quinn's 56(a)2 ¶ 13.) Attorney Lange repeated this belief during the hearing itself. (*Id.*) At the hearing on May 18, 2021, the Court canvassed Schleiter, who confirmed that she did not want Quinn serving in the role of conservator. (*Id.* ¶¶ 13, 14.) At the conclusion of the hearing, the Court stated, "I'm satisfied that, that your client [Schleiter] has capacity, Attorney Lange, and [] I should be speaking straight to her, and that this is what her wish is. So I'm going to go ahead and let you know, usually I wait, but I'm going to grant the petition." (*Id.* ¶ 15.) That same day, a Fiduciary's Probate Certificate was issued to Brune by the Fairfield Probate Court. (ECF No. 58-3 at 6.)

The Fairfield Probate Court (Maxham, J.) issued a formal written decree on June 17, 2021 (the "June 2021 decree"). (Greta's 56(a)2 ¶ 9.) The June 2021 decree provided that Brune, as conservator of Schleiter's estate, was given specific authority over certain of Schleiter's financial affairs and required Brune to "make a true and complete inventory of all property of [Schleiter] and file the inventory with the court within two months of the date of appointment." (*Id.* ¶ 10; ECF No. 54-5 at 3.) Additionally, as conservator of Schleiter's person, Brune was given authority over Schleiter's personal and medical care, her residence, and personal effects. (Greta's 56(a)2 ¶ 11; ECF No. 54-5 at 2.) The June 2021 decree also provided that Schleiter "shall retain all rights and authority not expressly assigned to the conservator." (Greta's 56(a)2 ¶ 12; ECF No. 54-5 at 3.)

On October 26, 2022, in a decree related to Quinn's petition to compel Brune to file an accounting (the "October 2022 Decree"), the Probate Court stated that "Laura Brune was appointed voluntary conservator of the estate and person . . . on June 17, 2021." (Greta's 56(a)2 ¶ 15; ECF No. 54-9 at 2.)

### 2.    Brune's Requests To Change The Policy's Beneficiary

On May 19, 2021, Brune sent an email to West Coast stating that she was "appointed conservator for [her] sister, Kristin Schleiter . . . [and that] [t]his overrides the previous power of attorney held by Quinn Degner . . . We would appreciate this being handled as quickly as possible." (ECF No. 55-1 at 2.) Brune also submitted to West Coast the May 18, 2021 Fiduciary's Probate Certificate. (Greta's 56(a)2 ¶ 23.)

Brune submitted multiple requests to change the Policy's beneficiary on May 19, 2021. At 8:36 a.m. CDT, Brune, purporting to act on behalf of Schleiter, electronically submitted to West Coast Life a Change of Beneficiary form designating Greta and Katrin as the Policy's primary and contingent beneficiaries. (*Id.* ¶ 24.) Brune then electronically submitted to West Coast another Change of Beneficiary form designating Quinn as the Policy's primary beneficiary, and herself as the Policy's contingent beneficiary. (*Id.* ¶ 25.) Subsequently, at 8:48 a.m. CDT, Brune electronically submitted to West Coast Life another Change of Beneficiary form designating Greta and Katrin as the Policy's primary beneficiaries, and herself as the Policy's contingent beneficiary. (*Id.* ¶ 26.)

### 3.    The Divorce Action

In 2021, the marriage between Quinn and Schleiter deteriorated. (Greta's 56(a)2 ¶ 18.) On May 19, 2021, Quinn filed for divorce, prompting automatic orders from the Superior Court to Schleiter and Quinn. (Quinn's 56(a)2 ¶ 26.) The automatic orders stated that, "[n]either party

shall change the beneficiaries of any existing life insurance policies, and each party shall maintain the existing life insurance . . . policies in full force and effect." (ECF No. 58-11 at 4.) They added that "[t]he automatic orders shall be effective with regard to the plaintiff or the applicant upon the signing of the complaint, or the application and with regard to the defendant or the respondent upon service and shall remain in place during the pendency of the action, unless terminated, modified, or amended by further order of a judicial authority upon motion of either of the parties." (*Id.*)

Quinn's attorney, Joseph O'Connor, wrote Attorney Lange, at 11:43 AM on May 19, 2021, stating, "I just signed the complaint seeking a legal separation. A copy of the complaint and the automatic orders are attached . . . I have given your cell phone number to Marshall [sic] Michael Delli Carpini who will call you for instructions on your preferred method for accepting these papers." (ECF No. 54-12 at 2.) That same day, Attorney O'Connor wrote to Attorney Lange: "The automatic orders prohibit any unilateral and extraordinary transfer of assets. These orders are binding upon Kristin and her agents, which includes her conservator . . . The orders prohibit any transfer or change to the life insurance." (*Id.*)

On May 20, 2021, Attorney O'Connor wrote to West Coast's legal department, attaching the divorce action filings and automatic orders, to advise them of Quinn's claim that "any change to the [P]olicy is a violation of automatic orders of the Connecticut Court . . . [and that it should] take such action in response to this notice as [it] sees fit." (ECF No. 54-14 at 2.)

On May 26, 2021, West Coast emailed Schleiter, stating: "Due to a recent audit, the web Change of Beneficiary acknowledged on 5/19/21 . . . which insures Kristin M. Schleiter, has been rescinded, based on the documentation confirming proceedings for a Legal Separation

were commenced on May 19, 2021. The web Change of Beneficiary received dated 5/19/21 at 8:48AM will also not be processed." (ECF No. 55-8 at 2.)

Schleiter passed away on February 13, 2022, while the divorce action was pending. (Greta's 56(a)2 ¶ 33.)

### B. Procedural Background

On March 24, 2022, West Coast commenced this interpleader action under Federal Rule of Civil Procedure 22. (ECF No. 1.) In June 2022, Quinn filed an answer to West Coast's Complaint and asserted a cross-claim against his daughters, seeking a declaratory judgment that he is the Policy's primary beneficiary and is entitled to receive and retain the Policy's proceeds from West Coast. (ECF No. 23.) That same day, Greta answered West Coast's Complaint and asserted against her father the following cross-claims: (1) tortious interference with expected inheritance and (2) tortious interference with contract. (ECF No. 24.) On July, 22, 2022, Greta and Quinn filed answers to the cross-claims. (ECF Nos. 33, 34.)

Greta's and Quinn's competing claims remain pending. In September 2023, the Honorable Michael P. Shea entered default judgment against Katrin, discharged West Coast from liability with respect to the Policy proceeds, and dismissed West Coast from the case. (ECF No. 63.)

Greta and Quinn filed cross-motions for summary judgment on March 15, 2023 and their opposition memoranda on April 28, 2023. (ECF Nos. 51–58, 61, 62.)

## II.   <u>LEGAL STANDARD</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

make a sufficient showing on an essential element of its case on which it has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23; *Anderson* 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which the jury reasonably could find for the non-moving party. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

## III.   <u>DISCUSSION</u>

The parties filed cross-motions for summary judgment on the following issues: (1) West Coast's Interpleader Complaint, (2) Quinn's cross-claim against Greta requesting declaratory judgment that he is the Policy's primary beneficiary and is entitled to the Policy's proceeds from West Coast, (3) Greta's cross-claim against Quinn for tortious interference with a contract, and (4) Greta's cross-claim against Quinn for tortious interference with expected inheritance. (Quinn's Mem., ECF No. 52; Greta's Mem., ECF No. 57-1.) Greta also moved for summary judgment on Quinn's affirmative defenses to prevent Policy changes to benefit Greta and Katrin, including capacity, probate authority, waiver, estoppel, unclean hands, and the automatic orders. (Greta's Mem. at 22–29.)

As explained below, the Court finds that: **(1)** genuine disputes remain as to whether Schleiter substantially complied with the Policy's procedures to change the beneficiary and thus, summary judgment on the issue of the Policy's beneficiary must be denied, **(2)** no genuine dispute of material fact exists with respect to Quinn's tortious conduct and thus, summary judgment on the tortious interference cross-claims must be granted in Quinn's favor, and **(3)**

in light of dismissal of Greta's tortious interference cross-claims, Quinn's affirmative defenses to those claims must be denied as moot.

A.    **Genuine Issues Of Material Fact Remain As To Whether There Was A Change Of Beneficiary**

Under Connecticut law,[4] the general rule is that "a change of beneficiary of an insurance policy can be effected only by following the procedure prescribed by the policy." *Bigley v. Pac. Standard Life Ins. Co.*, 642 A.2d 4, 7 (Conn. 1994). Even where a policyholder does not comply strictly with the procedures prescribed in the policy, the doctrine of substantial compliance provides that "the owner of a life insurance policy will have effectively changed the beneficiary if the following is proven: (1) the owner clearly intended to change the beneficiary and to designate the new beneficiary; *and* (2) the owner has taken substantial affirmative action to effectuate the change in the beneficiary." *Engelman v. Conn. Gen. Life Ins. Co.*, 690 A.2d 882, 888 (Conn. 1997).

The pertinent section of the Policy regarding a change of beneficiary states:

You may change a Beneficiary if:

(1) The Insured is living; and

(2) Written request, in a form acceptable to Us, is filed at Our Home Office.

The change will not take effect until it is recorded at Our Home Office. However, once such a change is recorded, the change will take effect as of the date the request was signed, whether or not the Insured is living on the date the change is recorded, subject to any payment made or other action taken by Us before such recording.

(ECF No. 54-1 at 14.)

---

[4] The parties' memoranda assert that Connecticut law controls the issues; such "implied consent [to the application of Connecticut law] . . . is sufficient to establish choice of law." *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004).

Relying on the Fairfield Probate Court's decrees, Quinn contends that he remains the Policy's primary beneficiary because Brune was not decreed Schleiter's conservator until June 2021, which is after Brune's May 2021 submissions to West Coast to change the beneficiary. (Quinn's Mem. at 11–14; Quinn's Opp. at 5-6.) Greta asserts Brune had authority to submit the requested changes because she was decreed Schleiter's conservator following the hearing on May 18, 2021, as shown by the statements on the record: "I'm satisfied that, that your client [Schleiter] has capacity, Attorney Lange, and, and I should be speaking straight to her, and that this is what her wish is. So I'm going to go ahead and let you know, usually I wait, but I'm going to grant the petition." (Greta's Opp at 9.) Greta also notes that Brune was issued a Fiduciary's Probate Certificate, signed by the Assistant Clerk, which certified Brune's date of appointment as May 18, 2021. (ECF No. 55-2 at 2, 3.)

For the purpose of resolving the summary judgment motions, the Court finds that there is no genuine dispute that Brune was appointed conservator on June 17, 2021. The Probate Court issued a written decree on June 17, 2021 stating that Brune is "appointed conservator of the person and estate." (ECF No. 54-5 at 2.) Then, on October 26, 2022, the Probate Court issued another decree related to Quinn's petition to compel the conservator to file an accounting, which stated that "Laura Brune was appointed voluntary conservator of the estate and person . . . on June 17, 2021." (ECF No. 54-9 at 2.) At this juncture, the inquiry stops here.

Probate Court Rule Section 3.3 requires decrees to "be in writing" and for the court to "memorialize each oral ruling in writing." Connecticut law further provides that "decrees of courts of probate, rendered after notice and from which no appeal is taken, shall be conclusive and shall be entitled to full faith, credit and validity." CONN. GEN. STAT. § 45a–24. Therefore, "[a] Probate Court decree is conclusive on all of the parties until or unless the decree

is disaffirmed on appeal." *Silverstein v. Laschever*, 970 A.2d 123, 130 (Conn. App. Ct. 2009); *see also O'Sullivan v. Haught*, 309 A.3d 1194, 1202 (Conn. 2024) (holding that appealing a Probate Court decree to the Superior Court neither vacates nor suspends the decree and that the "Probate Court decree remains in full force until it is modified or set aside on appeal").

The Court finds that the text of the October 2022 decree regarding Brune's date of appointment is unambiguous in stating that "Laura Brune was appointed voluntary conservator of the estate and person . . . on June 17, 2021." (ECF No. 54-9 at 2.) Though the Fiduciary's Probate Certificate may be relevant in cases where a decree is ambiguous, the October 2022 decree here precludes the use of contradictory evidence because that decree is "conclusive" evidence that Brune was appointed voluntary conservator on June 17, 2021. CONN. GEN. STAT. § 45a–24. Consequently, as Brune was not yet decreed to be conservator when she contacted West Coast to change the Policy's beneficiary in May 2021, Schleiter failed to strictly comply with the Policy's requirement that she, as opposed to another party, submit a written request to West Coast to change a beneficiary.

While it is undisputed that Schleiter did not strictly comply with the procedure prescribed in the Policy, genuine disputes remain as to whether Schleiter substantially complied with the Policy's procedure to change a beneficiary. Between May 2021 and February 2022, Schleiter, Brune, and Greta did not challenge West Coast's decision not to process Brune's change of beneficiary requests, nor did they attempt to change the Policy's designated primary beneficiary in Probate Court. (Greta's 56(a)2 ¶ 34.) The parties do not seriously dispute, however, that Schleiter's ALS worsened her neurocognitive symptoms and eventually led to her death. Schleiter was employed throughout her marriage with Quinn until she was forced to stop working because of her ALS and then began receiving disability. (Brune

Aff., ECF No. 61-3, at 1.) Triable issues therefore remain as to whether Schleiter "clearly intended to change the beneficiary and to designate the new beneficiary" and whether Schleiter has "taken substantial affirmative action to effectuate the change in the beneficiary." *Engelman*, 690 A.2d at 888.

Considering Schleiter's actions in the context of her worsening symptoms and the documentary records surrounding her disputed desire to change the Policy's beneficiary, the Court concludes that summary judgment must be denied. "[S]ummary judgment is notoriously inappropriate for determinations of claims in which intent, good faith, and other subjective feelings play dominant roles." *Hartford Life Ins. Co. v. Einhorn*, 497 F. Supp. 2d 398, 402 (E.D.N.Y. 2007) (quoting *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir. 1993)). Because "[i]ntent is exactly what is at issue in this case," the Court concludes that summary judgment is inappropriate. *Jackson Nat'l Life Ins. Co. v. Pagan*, No. 3:19-CV-01205 (JBA), 2020 WL 5230889, at *4-5 (D. Conn. Sept. 2, 2020).

Accordingly, Quinn's motion for summary judgment requesting declaratory judgment that he is the primary beneficiary is denied and Greta's motion for summary judgment that Greta and Katrin are the primary beneficiaries is denied.

### B. Greta Fails To Offer Sufficient Evidence Of Tortious Interference by Quinn.

A claim for tortious interference with contract requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship, (2) the defendant's knowledge of that relationship, (3) the defendant's intent to interfere with the relationship, (4) that the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct. *Appleton v. Bd. of Educ. of Town of Stonington,* 757 A.2d 1059,

1063 (Conn. 2000). As for a tortious interference with expected inheritance claim, a plaintiff must similarly establish that there was tortious conduct, such essential elements being: "(1) an expected inheritance, (2) the defendant's knowledge of the expected inheritance, (3) the defendant's intent to interfere with the expected inheritance, (4) the interference was tortious, and (5) actual loss suffered by the plaintiff as a result of the defendant's tortious conduct." *Solon* v. *Slater*, 287 A.3d 574, 592 (Conn. 2023).

Quinn contends that Greta had neither contract rights nor expected inheritance and that Quinn's attorney did not engage in any tortious conduct. (Quinn's Mem. at 21–26.) As explained below, the Court finds that Greta failed to present evidence that Quinn or his attorney engaged in tortious conduct, thus failing to raise triable issues as to her tortious interference claims.

Greta's theory that Quinn tortiously interfered with her right to be the primary beneficiary rests on the notion that Quinn committed misconduct in attempting to use a divorce action to proactively prevent Schleiter from disposing of her estate as she intended. Greta asserts that this "claim centers foremost on Quinn's abuse of process in using the initiation of the Divorce Action to try and bar changes to the Policy's primary beneficiary." (Greta's Opp. at 21; *see also* Greta's Mem. at 30–33.) However, "not every act disturbing a contract is actionable" because a plaintiff "must prove that the defendant's conduct was in fact tortious." *Larsen Chelsey Realty Co. v. Larsen*, 656 A.2d 1009, 1022 n.24 (Conn. 1995). "A claim is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." *Id.*

Greta fails to proffer evidence to show that there are triable issues as to whether Quinn engaged in tortious conduct. The "tortious" conduct element may be satisfied by evidence

showing that "the defendant was guilty of fraud, misrepresentation, intimidation or molestation or that the defendant acted maliciously." *Robert S. Weiss & Assocs., Inc.*, 546 A.2d 216, 223 (Conn. 1988). Greta asserts that Quinn is liable for a tortious email, dated May 20, 2021, from his counsel to West Coast that misrepresents the significance of Quinn's filing of a divorce action. But Greta overlooks that the May 2021 email informed West Coast of Quinn's interpretation of the automatic orders and that the email included the automatic orders at issue:

> This email is intended to put Protective on notice of Mr. Degner's claim that any change to the policy is a violation of the automatic orders of the Connecticut Court and that Protective should defer any action on any such request to not facilitate any such violation. Please take such action in response to this notice as Protective sees fits.

(ECF No. 54-14 at 2.) Greta does not show that Quinn's attorney improperly tampered with the automatic orders sent to West Coast or engaged in misconduct. An attorney's good-faith representation of a client, including communicating on behalf of that client based on that attorney's legal advice, does not support a claim of tortious interference. *Golembeski v. Metichewan Grange No. 190*, 569 A.2d 1157, 1160 (Conn. App. Ct. 1990) (granting summary judgment in a defendant's favor even though that defendant interfered by advising a client not to sell to the plaintiffs). Therefore, this email falls short of raising triable issues as to Quinn being guilty of tortious conduct, including fraud, misrepresentation, intimidation, molestation, or that Quinn acted maliciously.

Greta's theory that Quinn engaged in abuse of process by filing the divorce action fares no better. "[U]nder Connecticut law, a party does not abuse the legal process merely by filing suit. This is true regardless of the plaintiff's motive." *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 114 (2d Cir. 1996) (citing *Mozzochi v. Beck*, 529 A.2d 171, 173-74 (Conn. 1987)). Greta thus does not show triable issues as to Quinn's tortious conduct through his filing for divorce.

Accordingly, because Greta has failed to create a genuine dispute of material fact with respect to Quinn's tortious conduct, the Court concludes that Greta's summary judgment motion on her cross-claims of tortious interference with a contract and tortious interference with expected inheritance must be denied, and Quinn's motion for summary judgment as to the tortious interference claims is granted.

### C.      Quinn's Affirmative Defenses Are Moot Considering The Court's Dismissal Of The Tortious Interference Claims

Greta seeks summary judgment on Quinn's asserted defenses against her cross-claims, including capacity, probate authority, waiver, estoppel, unclean hands, and the automatic orders. (Greta's Mem. at 22–29.) The Court has granted summary judgment in Quinn's favor as to the tortious interference cross-claims. Accordingly, Greta's motion for summary judgment with respect to Quinn's affirmative defenses to her cross-claims is denied as moot.

## IV.      <u>CONCLUSION</u>

For the preceding reasons, the Court **grants in part and denies in part** Quinn's motion for summary judgment (ECF No. 51), and **denies** Greta's motion for summary judgment (ECF No. 57). Specifically, Quinn's motion for summary judgment is granted with respect to Greta's tortious interference cross-claims, and those claims are dismissed. Quinn's and Greta's motions are otherwise denied.

**SO ORDERED.**

Hartford, Connecticut
September 24, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge